R. McEaeláíid, Sp. J.,
delivered the opinion of the Court.
This is a bill of review. The original bill was filed by Ewing McClure, in his life-time, against Bur-son, Henry R. Lutz, A. A. Broyles, Osceola Sitgreaves and John Andes. The object of the bill was to assert a vendor’s lien upon a tract of land for unpaid purchase money, upon' the following state of facts: About the year 1858 or 1859, said McClure sold the land in question to Henry R. Lutz, upon a credit extending for several years, and gave to said Lutz an ordinary title bond, *756 retaining in himself the legal title, as security for the purchase money.
Lutz having paid part of the purchase money, sold part of the land to Adam Andes and one Holms, and McClure executed a deed for this part of the land, and as to this, there is no controversy. On the 2d of August, 1861, Lutz sold the balance of the land to John Andes, and McClure made to Andes a deed for the same, and took from him a new note for the unpaid purchase money, which note was executed also by Lutz. It is clearly shown, that in this transaction, it was the intention of the parties, that McClure’s lien for the payment of this note, should remain upon the land. He caused the note to be registered, assuming, that, as the note upon its face, showed it to be for the purchase money for the land, that this would constitute notice of the lien to third parties. On the 2d of May, 1863, McClure accepted another new note in the place of the one last mentioned, executed by A. A. Broyles, O. Sit-greaves and John Andes.
Andes had loaned to Broyles & Sitgreaves, a sum of money, for which they, at his instance, executed this note, directly to* McClure. On the 8th of July, 1863, Andes conveyed the land to Burson.
After McClure had accepted the note of the 2d May, 1863, but whether before or after the date of Bur-son’s deed, does not appear, McClure, at the instance, and in the presence of Burson, wrote, or had written across the face of the note on the Register’s books, “satisfied,” and signed his name thereto. • It was conceded that Burson, before he bought or paid *757 for the land, had notice of the unpaid purchase money, to McClure, and also that he knew that the note upon the Register’s books was satisfied, by the execution of the note of the 2d May, 1863. And the question raised by the pleadings in the cause, was, whether or not McClure waived or abandoned his lien upon the land, by accepting the new note of the 2d May, 1863, or marking the previous note on the Register’s books “satisfied” in the presence of Burson. Upon this issue, the testimony of two witnesses was taken. Upon the part,of McClure, Elbert Taylor proved that he was the register, and was in his office when McClure and Burson came in to have the note on the books marked satisfied. At first McClure refused to sign this on the record, and they both went out, but afterwards came back; McClure refused to sign the record, because he was afraid he would thereby lose his lien upon the land. Burson told him ■ that the new note, (the note of 2nd of May, 1863,) would hold his lien. upon the land.
McClure asked witness’s opinion, and witness thought as Burson did; and upon this, witness wrote the word “satisfied,” and McClure signed his name on the books. Bryrson was very anxious, and McClure reluctant, to make this transaction. For Burson, A. A. Broyles proved that Andes loaned the firm of Broyles & Sit-greaves $1,830, for which they,' with Andes, executed to McClure the note of 2nd of May, 1863, in the place of the one McClure then held upon Andes for the balance of the land. His understanding was, that McClure, on receiving this note, was to release his lien upon the land, so as to enable Andes to sell it; but he got this under *758 standing from Andes. This was, in substance, the entire case.
McClure died pending the suit, and the same was revived in the name of his personal representatives, and on the 27th of November, 1867, a final decree was rendered in their favor, declaring their lien upon the land. Hereupon this bill of review was filed, to review said decree, both for errors apparent upon the face ^of the decree, and also for newly discovered matter. The errors which this bill charges as apparent on the decree, are:
1. That the decree erroneously assumes that, by the registration of the note of the 2nd of August, 1861, McClure had a valid lien upon the land, when such was not its effect; and because it is apparent that, by accepting the new note of the 2nd of May, 1863, and marking the former one satisfied, McClure’s lien was lost, and that the Court, in refusing to so hold, committed an error of law, and this error “is error apparent.” The executors of McClure answered, insisting upon matters of demurrer. The action of the Court upon a demurrer to a bill of review, for errors apparent upon the face of the record, necessarily disposes of the whole case. Whether or not the error appears must, be determined from the bill and the original record, and cannot be changed by an answer to the bill of review, or proof. We think it clear that this is not a case of error apparent upon the face of the record. It has been held by this Court, that, for the purpose of ascertaining whether or not error of this character exists, the pleadings and decree may be looked to, but not the proof at large. Eaton v. Dickinson, 3 Sneed, 397.
*759 But even if we look to the proof, the error is not-apparent. By “error apparent” is not meant that the decree is merely erroneous and improper, because based upon erroneous conclusions of fact, drawn from the evidence, but a decree that is erroneous in point of law upon the facts assumed. In the language of Lord Eldon, “'there is a distinction between ‘error in the decree and ‘error apparent.’” Error apparent does not apply to a merely erroneous judgment. “The question,” he says, “is not whether the cause is well decided, but whether the decree is right or wrong upon the face of it;” and gives, as an instance, “an infant not having a day in court to show cause,” etc. 3 Daniel’s Ch. Pr., 1728.
As we have seen, the question in the original cause was, whether or not McClure held a lien upon the land for unpaid purchase money, or whether, by the act of accepting the new note of the 2nd of May, 1863, and marking the former one satisfied, he waived or abandoned this lien. "Whether or not a vendor who sells and conveys his land, intends to waive his lien by taking personal security, is a question of fact, upon which evidence may be heard. Ordinarily, the law presumes that the lien is retained; but when personal security is taken, the rule is changed, and the law presumes that the vendor intended to waive his lien and rely upon his personal security. But this presumption may be rebutted by proof, showing that such was not the object and intention of the parties. Campbell v. Baldwin, 2 Hum., 248; Marshall v. Christmas, 3 Hum., 616; 2 Head, 128; 3 Head, 384.
It was not assumed as a matter of law, by the decree *760 in question, that the lien of the complainant, McClure, existed by mere force of his note upon the register’s hook. It is clear that causing the note to be registered could not give it the effect intended. The facts can only be looked to as evidence of the intention of the parties. -The question before the Court was one of fact, to be determined upon the evidence, upon which the Court was of opinion that' the lien of McClure was retained upon the land for the balance of purchase money due, and that this lien was not waived by accepting the note of. the 2nd of May, 1863, or marking the former note satisfied. Nor was Burson induced to believe that the lien was thus waived.
If the Chancellor erred in this, the error consisted in drawing erroneous conclusions .of fact from the evidence and circumstances in the record. An error of this character, if one existed, is not “error apparent” upon the face of the record, for which a. bill of review will lie. And besides, we should have arrived at the same conclusions the Chancellor did.
This bill is also filed upon the ground of newly-discovered matter, and leave of Court to file the bill upon this ground was obtained. The question whether the Court acted properly in granting this leave, is probably not before us, for the reason that no motion was made to dismiss; and the affidavits upon which the leave was granted, if any were made, are not made part of the record. The allegation of new matter in the bill is this: “The facts which your orator believes he can certainly establish by credible and reliable testimony, are, that before your orator had taken, a deed for the land, but after he had *761 contracted verbally "with, said Andes for the purchase thereof, the said McClure,, learning that said Andes was about to convey said land to your orator, and your orator learning that said McClure was the vendor originally to said Andes, distinctly agreed with and informed your orator that the purchase money for said land, sold and conveyed to said Andes, and by him to your orator,. was satisfied, and that said land was free from in-cumbrance; and upon this assurance, your orator completed the purchase, and paid in full for the land. This .newly-discovered testimony could not have been produced upon the hearing in the original cause, because it was not then known to your orator that these facts •were known to the witness by whom he is now able to prove them.” To this the defendants insist upon a demurrer, upon the ground that the newly-discovered testimony is not stated with sufficient particularity, and that the names of the witnesses-by whom the facts can be proved should have been given. It seems well settled that the. affidavits upon which leave is asked to file a bill of review of this character’, should state with pa/rtieularily the newly-discovered testimony. How the new matter should be stated in the bill seems not to ,be so well settled.
•We are of opinion that the “new matter” should be so stated as to enable the Court to determine upon a demurrer, whether or not the newly-discovered testimony, when produced, will be of such a character as will make it controlling in the cause, or whether it will be merely cumulative, and such as will not necessarily change the result, and so that the Court may *762 also determine whether, from . the nature of the new matter, the party has been guilty of any negligence in not discovering and producing the evidence upon the .first trial. In Livingston v. Hubbs, 3 J. C. R., Chancellor Kent thought that the new evidence must not be a mere accumulation of witnesses to the same fact, but some stringent written evidence or newly-discovered papers. Other authorities are to the same effect; ■ and it is said that when testimony of witnesses is admitted to establish the new matter, it should be done with great caution, as tending to open the door to perjury. Story Eq. Pl., § 415, note 1. See, also, Frazier v. Sypert, 5 Sneed, 100.
Furthermore, where the new matter is, from its nature, such as that complainant, with proper diligence, might have had it upon a former trial, no relief will be granted upon it. Young v. Forgey, 4 Haywood, 189, 190. In that case, the principal witnesses by whom the complainant proposed to establish the new matter, were his neighbors and one, bis brother. The Court held that this showed such negligence upon his part, as that he was not entitled to the benefit of the evidence upon a bill of review. The allegation of newly-discovered testimony in this cause amounts to nó more than an averment, that he can establish that McClure had admitted to him that his purchase money was satisfied, and that he distinctly waived his lien upon the land for unpaid purchase money. This, as we have seen, was the proposition controverted in the original cause. The bill does not state the nature of the newly-discovered testimony, by which this proposition is to be *763 established, except that he can establish the first by credible and reliable witnesses. In other words, it is an averment that, upon another hearing, he can obtain other witnesses to testify in his behalf, upon the question controverted in the original cause, and upon which testimony was then taken. That this new testimony is merely cumulative is evident; and whether it would be sufficiently strong to change the result could not be determined from the bill, but only upon consideration of the additional testimony, when taken and considered with the other evidence in the original cause. If this be a good ground for a bill of review, there would probably be but few seriously contested cases where grounds equally strong might not be presented. Parties after a trial, and after discovering the ground upon which they failed, would too often discover that, upon another trial, they could maintain their side of the contest, with more evidence and greater skill. This would open the door to endless frauds and perjuries.
Ve think the demurrer should have been sustained and the bill dismissed. This is the more evident, when we consider the newly-discovered testimony which was taken in the cause. • The principal witness, by whom complainant attempts to make out the newly discovered facts, is John Andes, from whom he bought the land, and who bought from McClure, and who, of all others, was cognizant of the facts, as the complainant must have well known; as he states in his answer to the original bill, that Andes procured McClure to release his lien. His failure to procure the testimony of Andes upon the former hearing, was such negligence as should not be excused. Without dis *764 cussing the testimony offered in support of the bill of review, it clearly appears to be of merely a cumulative character; and we are by no means satisfied, that, taken in connection with the evidence and facts in the original cause, it changes the result.
The Chancellor dismissed the bill, and we affirm his decree.